UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JILL CHARNESKY, Individually and as
Mother and Next Friend of [B.C.], a Minor
and Disabled Individual,

        Plaintiff,

v.

TONY LOUREY,[1] in his Official Capacity
of Commissioner of the Minnesota
Department of Human Services;
NIKKI FARAGO,[2] in her Official Capacity
as Assistant Commissioner for Children and
Family Services for DHS;
JAMIE SORENSON, in his Official
Capacity of Director of Child Safety and
Permanency Division of CPS for DHS;
HEIDI WELSH, Individually and in her
Official Capacity as Olmsted County
Administrator;
PAUL FLEISSNER, Individually and in his
Official Capacity as Deputy County
Administrator of Olmsted County Health,
Housing and Human Services;
SARAH OAKES, Individually and in her
Official Capacity as Director of Health,
Housing And Human Services for Olmsted
County;

File No. 18-cv-2748 (ECT/KMM)

**MEMORANDUM OPINION
AND ORDER**

---

[1]    Current Commissioner of the Minnesota Department of Human Services Tony Lourey is substituted for former Commissioner Emily Piper, because a "[public] officer's successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d).

[2]    The Complaint names "Nikki Fargo" as a Defendant; evidently that was a misspelling. Nikki Farago has moved to dismiss. Accordingly, her name is corrected in the caption.

EMILY COLBENSON, in her Official
Capacity as Director Of Adult and Family
Services in Olmsted County;
AMY SHILLIABEER, Individually and in
her Official Capacity as Director of Child
and Family Services;
JESSE STRATTON, Individually and in his
Official Capacity as Supervisor of Child
Protection Services;
CHAD KIRSCHBAUM, Individually and in
his Official Capacity as Supervisor of Child
Protection Services;
KIM PEASE, Individually and in her Official
Capacity of Social Worker;
MARISSA GAGNON, Individually and in
her Official Capacity of Social Worker;
JENNIFER STILL, Individually and in her
Official Capacity of Social Worker;
KAREN HAUGERUD,[3] Individually And in
her Official Capacity as Guardian Ad Litem;
SUSAN JENKINS, M.D., Individually and in
her Official Capacity as Olmsted County
Medical Consultant;
MARK OSTREM, Individually and in His
Official Capacity as Olmsted County
Attorney;
MICHELLE BARNES, Individually and in
her Official Capacity as Assistant Olmsted
County Attorney;
FREDERICK SUHLER,[4] Individually and in
his Official Capacity as Public Defender;

---

[3]     The Complaint names "Karen Huargarud" as a Defendant; evidently that was a
misspelling.  Karen Haugerud has moved to dismiss.  Accordingly, her name is corrected
in the caption.

[4]     The Complaint names "Frederick Shuler" as a Defendant; evidently that was a
misspelling.  Frederick Suhler has moved to dismiss.  Accordingly, his name is corrected
in the caption.

JUDITH TEED, Individually and in her
Official Capacity as Olmsted County Foster
Care Provider; and
Unknown DOE defendants,

      Defendants.

_____

Jill Charnesky, pro se.

Nicholas Walker Anderson, Minnesota Attorney General, St. Paul, MN, for defendants
Tony Lourey, Nikki Farago, Jamie Sorenson, and Karen Haugerud.

Gregory J. Griffiths, Dunlap & Seeger, Rochester, MN, for defendants Heidi Welsh, Paul
Fleissner, Sarah Oakes, Emily Colbenson, Amy Shilliabeer, Jesse Stratton, Chad
Kirschbaum, Kim Pease, Marissa Gagnon, Jennifer Still, Mark Ostrem, and Michelle
Barnes.

Bryon Glen Ascheman and Richard J. Thomas, Burke & Thomas, PLLP, St. Paul, MN, for
defendant Susan Jenkins, M.D.

Aram V. Desteian and Kelly A. Putney, Bassford Remele, Minneapolis, MN, for defendant
Frederick Suhler.

Michelle Draewell and James S. McAlpine, Quinlivan & Hughes, PA, St. Cloud, MN, for
defendant Judith Teed.

_____

      Pro se plaintiff Jill Charnesky commenced this action on her own behalf and as

"next friend" of her son, B.C., asserting claims against nineteen defendants relating to their

alleged involvement in child-protection matters involving her and B.C.  Defendants fall

into five groups: (1) four defendants are with the Minnesota Department of Human

Services (the "DHS Defendants"); (2) twelve defendants are associated with Olmstead

County (the "Olmstead County Defendants"); (3) one defendant, Frederick Suhler, served

briefly as Charnesky's court-appointed attorney in a proceeding in Olmstead County

District Court; (4) one defendant, Susan Jenkins, M.D., is a private-practice physician who

treated B.C. for a time; and (5) one defendant, Judith Teed, is a foster-care provider in Olmstead County. Defendants seek dismissal of all claims asserted against them, with one exception. The exception is the Olmstead County Defendants, who seek dismissal of some claims and, with respect to other claims, an order pursuant to Federal Rule of Civil Procedure ("Rule") 7(a)(7) requiring Charnesky to reply to certain paragraphs of their answer asserting immunity-related defenses. The law requires that Defendants' motions be granted.

I[5]

Charnesky alleges that her son, B.C., is disabled, and has been diagnosed with various longstanding mental and neurological disorders. Compl. ¶¶ 7, 26–27, 29. Although the two were living out of state at the time, B.C. was referred to the Mayo Clinic, and he began receiving care there in February 2016. *Id.* ¶¶ 33–37. But it was difficult to pursue care at the Mayo Clinic while residing in another state, and in December 2016, Charnesky and B.C., moved to Rochester, Minnesota in December 2016, to better enable B.C. to treat at the Mayo Clinic. *Id.* ¶¶ 6, 38–39.

Several weeks after the pair moved to Minnesota, Charnesky became severely depressed and went to the Mayo emergency department. *Id.* ¶ 56(D). She was admitted to the hospital for ten days to treat severe seasonal affective disorder. *Id.* ¶ 56(E). Because she did not know anyone in Minnesota at the time, she voluntarily surrendered B.C. to the

---

[5]   In describing the relevant facts and resolving Defendants' motions to dismiss, all factual allegations in the Complaint are accepted as true, and all reasonable inferences are drawn in Charnesky's favor. *See Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009).

care of Olmstead County Social Services during her hospital stay. *Id.* ¶ 56(D). Upon her discharge, B.C. was returned to her custody; at that same time, she expressed concerns about B.C.'s mental health to the social worker with whom she had worked in surrendering B.C.'s custody, Defendant Jennifer Still. *Id.* ¶ 56(F). The resources that Still suggested were not available to Charnesky because of her limited financial resources at the time. *Id.* ¶¶ 56(F), 57. Charnesky's own treatment following her discharge has been effective. *Id.* ¶ 71.

In March 2017, a Mayo psychiatry resident made a serious error with B.C.'s medication, and he had to be admitted to the Mayo Clinic emergency department. *Id.* ¶ 43. Charnesky retained an outside psychiatrist to treat B.C. and informed the resident that B.C. would no longer be her patient. *Id.* ¶¶ 44–45. Within twenty-four hours of B.C. being admitted to the emergency department, the psychiatry resident who made the medication error initiated a false CHIPS petition with Olmstead County Child Protection indicating that B.C. was the victim of child abuse. *Id.* ¶ 46. ("CHIPS" stands for "child in need of protection or services," *see generally* Minn. Stat. § 260C.141.) The resident's report recommended immediately removing B.C. from Charnesky's care. Compl. ¶ 56. Charnesky alleges that the resident, in concert with at least one other Mayo staff member, did this so that Charnesky would be preemptively discredited if she were to pursue a malpractice claim based on the medication error, and that in this way Olmstead County Child Protection acted as Mayo's "enforcer." *Id.* ¶ 83.

Jennifer Still—the same Olmstead County social worker who had interacted with Charnesky during her short-term voluntary surrender of B.C. as she sought emergency

medical care—authored the CHIPS petition. *Id.* ¶¶ 22, 47. That petition alleged that Charnesky suffered from factitious disorder by proxy (previously called Munchausen syndrome by proxy), a condition in which the subject falsely claims that another person has physical or psychological signs or symptoms of illness, or causes injury or disease in another person—here, according to the CHIPS petition, B.C.—with the intention of deceiving others. *Id.* ¶¶ 48, 64; *see generally* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* § 300.19 (5th ed. 2013). (Charnesky had previously disclosed to B.C.'s treating neuropsychologist at Mayo that a physician in B.C.'s previous state of residence had accused Charnesky of having the disorder, but that an investigation by child-welfare authorities in that jurisdiction had "completely cleared" her. Compl. ¶¶ 62–63.) Not only does Charnesky deny having such a condition, she denies several of the other factual assertions in the CHIPS petition in ways that range from small to highly significant. *Id.* ¶¶ 48–49, 56(A)–(C), 64–81, 84. B.C. is also alleged to have denied most, if not all, of the allegations in the CHIPS petition. *Id.* ¶ 84.

On April 4, 2017, a Mayo psychiatrist who was sympathetic to Charnesky and who disagreed with the resident's report to Child Protective Services tried to warn Charnesky to leave the state before the CHIPS petition was served, but Charnesky was reluctant to remove B.C. from the care of his physicians at the Mayo Clinic. *Id.* ¶¶ 52–54. She stayed in Minnesota, and B.C. was taken into the custody of Olmstead County. *Id.* ¶ 55.

From there, Charnesky alleges, events worsened significantly. The CHIPS petition proceeded in Olmstead County District Court, although B.C.'s medical records—relevant

to the central issue of whether Charnesky was unable to care for B.C. due to her own alleged factitious disorder by proxy—had not been produced to Charnesky. *Id.* ¶¶ 86–93. Meanwhile, B.C. was in a foster home that was unable to care for his medical needs and in which he was emotionally and verbally abused. *Id.* ¶¶ 94–96. B.C. was driven to self-harm in that foster placement, and after a hospitalization he was sent to a juvenile detention center where he was assaulted. *Id.* ¶¶ 96–100. No one reported that assault to the Olmstead County District Court until Charnesky, who learned of the assault only by happenstance, reported it. *Id.* ¶¶ 100–01, 105. After Charnesky reported B.C.'s assault to the state court, she alleges, CPS began retaliating against her for doing so by, among other things, barring her from attending B.C.'s medical and therapy appointments, reducing her visitation and requiring that it be supervised, cutting her off from receiving information from B.C.'s school, reducing her phone contact with B.C., and preventing her from sending him mail. *Id.* ¶¶ 107, 109, 124, 164. When B.C. was moved from the juvenile facility to a new foster home, Defendant Teed, the foster parent in that placement, did not facilitate a phone call between Charnesky and B.C. that had been planned for Christmas Day. *Id.* ¶¶ 108, 164.

B.C. was about 16 when these events began, and he turned 18 a few months ago. Mot. to Unseal [ECF No. 6]. The state-court judge has extended B.C.'s CHIPS petition until B.C. turns 19, which will occur about six months from now. *Id.*; Compl. ¶ 55. Charnesky believes Defendants' ultimate goal is to have B.C. placed into a permanent guardianship, where she will be unable to have contact with him. Compl. ¶ 125. Ultimately Charnesky, with B.C., fled the state. *Id.* ¶¶ 137–46. She was criminally charged. *Id.* ¶ 146. Those criminal proceedings are not at issue in this case.

II

A

Giving her the benefit of every reasonable doubt and construing the Complaint liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted), Charnesky appears to bring one claim solely on her own behalf—Count VIII (mistakenly numbered in the Complaint as Count XIII), a claim under 42 U.S.C. § 1983 alleging prosecutorial misconduct by two of the Olmstead County Defendants. Compl. ¶ 170. She appears to bring all other claims either solely on behalf of B.C., as his next friend, *see id.* ¶¶ 152 (Count II), 154 (Count III), 160 (Count IV), 162 (Count V), or jointly on behalf of both herself and B.C., *see id.* ¶¶ 150 (Count I), 165 (Count VI), 164 (Count VII).

Insofar as she purports to bring claims on behalf of B.C., Charnesky cannot pursue them because she is not an attorney and is not represented by counsel in this action. "A nonlawyer . . . has no right to represent another entity . . . in a court of the United States." *Knoefler v. United Bank of Bismarck*, 20 F.3d 347, 348 (8th Cir. 1994) (citations omitted). That general rule holds true even when the non-attorney seeks to represent her own children. *Bower v. Springfield R-12 Sch. Dist.*, 263 F. App'x 542, 542 (8th Cir. 2008) (per curiam) (unpublished table opinion) (citation omitted); *Myers v. Loudoun Cty. Pub. Schs.*, 418 F.3d 395, 401 (4th Cir. 2005) (collecting cases). This rule protects the rights of those whose cases come before the Court for adjudication and also "jealously guards the judiciary's authority to govern those who practice in its courtrooms." *Myers*, 418 F.3d at 400 (citations omitted); *see also Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (per curiam) ("[T]he competence of a lay[person] [litigating for herself is] clearly too

limited to allow h[er] to risk the rights of others"). The claims Charnesky alleges on behalf of B.C. will be dismissed without prejudice. *See Bower*, 263 F. App'x at 542.

In her opposition to the Olmstead County Defendants' motion, *see* ECF No. 77 at 23, and again at the hearing, Charnesky requested that the Court appoint counsel for B.C. Although no constitutional or statutory right exists to appointed counsel in a federal civil case, *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006) (citation omitted), a court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Federal district courts have "a good deal of discretion to determine whether representation is warranted given the nature of the case and the litigants." *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011) (citation omitted). In determining whether to appoint counsel, courts consider "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." *Phillips*, 437 F.3d at 794 (citation omitted).

But even where a court determines that the "plaintiff as well as the court will benefit from the assistance of counsel," *see Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1005 (8th Cir. 1984), § 1915(e)(1) does not authorize the court to *require* any attorney to undertake representation of an indigent civil litigant; it merely codifies the court's authority to *ask*. *See* 28 U.S.C. § 1915(e)(1) (providing that the court "may request" such representation); *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 305, 309 (1989) ("Congress did not authorize mandatory appointments" by enacting the forerunner to the current § 1915(e)(1), which similarly provided that courts "may request" that

attorneys represent indigent civil litigants). Here, the Court already made such a request by referring Charnesky to the FBA *Pro Se* Project, a program operated by the Minnesota Chapter of the Federal Bar Association in which volunteer lawyers donate their time to assist unrepresented individuals. *See* ECF No. 5. Charnesky was referred to the FBA *Pro Se* Project six months ago, a few days after filing the Complaint, and thus far either no lawyer has been willing to represent her or B.C. or Charnesky has declined to accept an offer of assistance.

Even if other avenues for identifying willing counsel were available and not redundant, it seems likely that pressing an attorney into service in this litigation would not afford B.C. adequate protection. *See* Fed. R. Civ. P. 17(c)(2) (providing that "[t]he court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action"). His claims would still be deeply intertwined with those his mother brings in this same case, and the litigation of his factually and legally related claims therefore would be bound up with the litigation decisions of a pro se litigant. Furthermore, it is not at all clear whether B.C.'s interests are served by participating in this litigation, even through a representative. In December 2018—after his eighteenth birthday but while still operating under a limited guardianship, *see* Desteian Decl., Ex. 1 (Order Appointing Limited Guardian entered in Olmstead County on Nov. 28, 2018) [ECF No. 48-1]—he wrote a letter to his mother and aunt in which he told them "I'm tired of Court and I'm tired of these Court battles so I'm asking you not to go to Court. I don't need you to fight for me. I can fight my own battles. I want this to be over. It causes too much stress for me." Pl.'s Opp'n to Olmstead Cty.

Defs.' Mot., Ex. O at 6 [ECF No. 77-21].  Charnesky insists the letter is a forgery, *see id*.

¶ 32, but that is not at all evident from her submissions to the Court.  *Compare id*., Ex. O

at 6 (signature on allegedly forged letter) *with id.*, Ex. O at 7 (allegedly authentic signature).

In the circumstances presented by this case, including the complexities and

difficulties that would necessarily arise if B.C. were to litigate his claims in this case

separate from, but still alongside, his mother, and the serious doubts about whether B.C.

wants, or believes he would benefit from being the subject of, this type of federal

civil-rights litigation, dismissing B.C.'s claims without prejudice would afford the widest

range of protection to B.C.'s rights, consistent with Rule 17(c)(2).  If he wants to proceed

with litigation, he can take steps to do so, and nothing in this Court's disposition of his

claims today will prejudice his rights.  If does not want to sue, he need not.  Accordingly,

the Court will decline to take further action to facilitate retention of counsel for B.C. in this

case at this time.

B

Because the only claims Charnesky may pursue are those she brings on her own

behalf, the Court next turns to those four claims: Count I, a § 1983 substantive due process

claim against all Defendants based on the removal of B.C. from Charnesky's home[6];

Count VI, a § 1983 conspiracy claim against all Defendants except three of the four DHS

---

[6]     Charnesky nominally brings Count I pursuant to 42 U.S.C. § 1982, but that appears
to be a typographical error.  Section 1982 pertains to racial discrimination in the context of
property rights.  Count I alleges that B.C.'s substantive due process rights were violated,
and it will be construed as arising under § 1983.  *See Erickson v. Pardus*, 551 U.S 89, 94
(2007) (applying liberal pleading construction to pro se filings).

Defendants; Count VII, an ADA-retaliation claim against all Defendants; and Count VIII, a § 1983 claim alleging prosecutorial misconduct against two of the Olmstead County Defendants, Ostrem and Barnes.

1

In the cover letter to a late-filed brief opposing the Olmstead County Defendants' motion to dismiss, Charnesky stated, "I will not be responding to the Motion to Dismiss filed by the State Defendants. I have decided to voluntarily dismiss those Defendants. I will do that paperwork as soon as possible." Pl.'s Opp'n to Olmstead Cty. Defs.' Mot., Cover Letter [ECF No. 77-5]. Her cover letter is signed. *Id.* At the hearing on Defendants' motions to dismiss, Charnesky confirmed that she intended to dismiss the four DHS Defendants—Lourey,[7] Farago, Sorenson, and Haugerud. Based on Charnesky's filing and her verbal confirmation as to specifically which Defendants she intends to dismiss, Charnesky's cover letter is construed as a notice of voluntary dismissal under Rule 41(a)(1)(A)(i). That rule permits Charnesky to "dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." *Id.* The DHS Defendants have not filed an answer or a motion for summary judgment, and her cover letter therefore satisfies the requirements of Rule 41(a)(1)(A)(i). Accordingly, the DHS Defendants will be dismissed without

---

[7] At the hearing, Charnesky stated that she intended to dismiss former DHS Commissioner Emily Piper, whom Charnesky originally named in her official capacity; as described above, Lourey is substituted for Piper here under Fed. Civ. P. 25(d).

prejudice, *see* Fed. R. Civ. P. 41(a)(1)(B) ("Unless the notice . . . states otherwise, the dismissal is without prejudice."), and their motion to dismiss will be denied as moot.

2

As for Charnesky's § 1983 and ADA-retaliation claims, Suhler, Jenkins and Teed each move to dismiss those claims against them in their entirety, either under Rule 12(b)(6) or Rule 12(c). In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6). *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

a

To "state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Magee v. Trs. of the Hamline Univ.*, 957 F. Supp. 2d 1047, 1055 (D. Minn. 2013), *aff'd sub nom. Magee v. Trs. of Hamline Univ.*, 747 F.3d 532 (8th Cir. 2014). Alternatively, a plaintiff may be able to make out a §1983 claim if she can show that a private party "willfully participated with state officials and reached a mutual understanding concerning the unlawful objective of a

13

conspiracy." *Dossett v. First State Bank*, 399 F.3d 940, 951 (8th Cir. 2005) (citation omitted). Defendants Suhler, Jenkins, and Teed each argue that Charnesky fails to plead facts to show that they were acting under color of state law at the time they performed the acts or omissions Charnesky describes in her Complaint and that the § 1983 claims against them therefore should be dismissed under Rule 12(b)(6). *See* Suhler's Mem. in Supp. at 10–14 [ECF No. 47]; Teed's Mem. in Supp. at 2 [ECF No. 55]; Jenkins's Mem. in Supp. at 2 [ECF No. 60]. They are correct.

As an initial matter, a series of allegations raised in Charnesky's § 1983 claims as to all Defendants collectively—including, without specificity, Suhler, Jenkins, and Teed— are generalized and conclusory, and they cannot be accepted as true. For example, Charnesky alleges that all Defendants "develop and implement policies that cover-up physical and emotional abuse of children in foster care, place them in illegal and dangerous placements, and keep them far longer than is necessary in foster care," and "intentionally [do] not implement[ ] training, produc[e] manuals, enforce[e] and discipline[e] social workers for compliance on matters of custody and official misconduct under Minnesota Statute § 518D," Compl. ¶ 150; that all Defendants conspired to deprive Charnesky and B.C. of their rights, *id*. ¶ 165; and that all Defendants "began a pattern of retaliation and intimidation" after Charnesky reported B.C.'s assault to the Olmstead County judge, *id*. ¶ 164. Some of those statements are incomprehensible, let alone implausible, with respect to a court-appointed lawyer, a private-practice psychiatrist, or a foster parent: How could someone in any of those roles discipline social workers, for example? Furthermore, all of these assertions are generalized, conclusory, and do not "plead[ ] factual content that allows

14

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Accordingly, Charnesky's § 1983 claims against Suhler, Jenkins, and Teed succeed or fail based on the specific factual allegations she makes as to each one's conduct.

For about six months, Suhler acted as Charnesky's court-appointed attorney in the CHIPS proceedings in Olmstead County. Compl. ¶ 103. She alleges that he was appointed to represent her in June 2017, that he met with her about the case, and that the state court discharged him from representing her in early 2018, at which point she began representing herself, pro se and no longer "muzzled" by Suhler. *Id.* ¶¶ 103, 105. She further alleges that during the course of his representation, his services were inadequate. Specifically, she alleges he "did nothing to defend" her, failed to attend "most" case management conferences, was inattentive when he did attend them, and never filed responses to any of CPS's filings despite her requests that he so do. *Id.* ¶ 103. She also alleges he told her, early in the course of his representation: "GIVE UP JILL, EVERYBODY IS GUILTY HERE. DON'T YOU KNOW YOU ARE IN THE TWILIGHT ZONE!" *Id.*

All of these allegations relate to his conduct as Charnesky's court-appointed counsel. *See id.* "The conduct of counsel, either retained or appointed, in representing clients does not constitute action under color of state law for purposes of a § 1983 action." *Harkins v. Eldredge*, 505 F.2d 802, 803 (8th Cir. 1974) (per curiam) (citation omitted); *see also Myers v. Vogal*, 960 F.2d 750, 750 (8th Cir. 1992) (per curiam) ("The attorneys who represented Myers, whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983." (citation omitted)). She also has not

pleaded any facts that would allow the Court to draw the reasonable inference that Suhler "willfully participated with state officials and reached a mutual understanding concerning the unlawful objective of a conspiracy" such that he could be held liable under § 1983 despite being an otherwise non-state actor. *See Dossett*, 399 F.3d at 951. Accordingly, Suhler is entitled to dismissal of the § 1983 claims against him.

Dr. Jenkins is a psychiatrist in private practice in Rochester, Minnesota. *See* Compl. ¶ 126; *see also id.* ¶ 134 (alleging that Dr. Jenkins "has never been hired by anyone. She has always worked for herself."). After the Mayo resident made her error with B.C.'s medication, Charnesky sought private psychiatric care for B.C. at Dr. Jenkins's clinic. *Id.* ¶ 126. Charnesky alleges that Dr. Jenkins "frequently d[oes] work for CPS and Olmstead County" and "follows all the orders of CPS." *Id.* ¶ 127. With respect to B.C.'s case, Charnesky alleges that Dr. Jenkins "wrote reports to the [Olmstead County] Court recommending no visitation" between Charnesky and B.C. and "was paid by the County for services to the County that she provided" in B.C.'s case. *Id.* ¶¶ 25, 134. Charnesky believes Dr. Jenkins gave B.C. a bogus diagnosis of autism spectrum disorder, improperly diagnosed Charnesky herself as having factitious disorder by proxy, and opined that Charnesky had abused B.C., despite never having examined Charnesky or reviewed most of B.C.'s medical records. *Id.* ¶¶ 129–33.

Those allegations do not allow the Court to infer that Dr. Jenkins acted under color of state law. Charnesky herself acknowledges that Dr. Jenkins is in private practice, and that she saw B.C. in her capacity as a private-practice psychiatrist. *Id.* ¶¶ 126, 134. A private actor's mere receipt of public funds does not transform her actions into those of the

state.  *Nichols v. Metro. Ctr. for Indep. Living, Inc.*, 50 F.3d 514, 517–18 (8th Cir. 1995) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 840–43 (1982)).  Similarly, a private party ordinarily does not act under color of state law when she provides testimony to a court.  *See Briscoe v. LaHue*, 460 U.S. 325, 329–30 (1983) ("It is beyond question that, when a private party gives testimony in open court in a criminal trial, that act is not performed 'under color of law'" unless the third party is acting in conspiracy with prosecutors or other state officials.).  And Charnesky has not alleged facts from which the Court could reasonably infer that Dr. Jenkins acted as part of any conspiracy with state officials.  Although she refers to Dr. Jenkins "follow[ing] all the orders of CPS," Compl. ¶ 127, that allegation is not only conclusory, it says nothing about what some unnamed state official might (or might not) have told Dr. Jenkins to do with respect to B.C.  Because Charnesky has not plausibly alleged that Dr. Jenkins acted under color of state law, her § 1983 claims against Dr. Jenkins must be dismissed.

Defendant Teed began providing in-home foster care to B.C. on the weekends part-way through his time at the juvenile facility where he was assaulted, and full-time after he left that facility.  *Id*. ¶ 108.  In addition to a number of unflattering alleged facts about Teed personally, which are not relevant to the claims Charnesky alleges in this action, *see id*. ¶ 108, Charnesky alleges that Teed is one of two adults who monitors B.C.'s twice monthly phone calls with Charnesky, *id*. ¶ 124, that after Charnesky was arrested trying to flee the state with B.C., Teed took B.C. back to her own home, *id*. ¶¶ 140, 143, and that Teed maliciously prevented B.C. from calling Charnesky for a pre-arranged phone call on Christmas Day in 2017, *id*. ¶ 164.  With respect to that specific phone call, Teed

instead prompted B.C. to call Charnesky the day after Christmas, saying that she had forgotten to have B.C. call on Christmas. *Id.*

Under Minnesota law, foster-care providers are not agents or employees of the state, but instead are private parties who act as independent contractors. *See Sayers by Sayers v. Beltrami Cty.*, 472 N.W.2d 656, 665 (Minn. Ct. App. 1991) (citation omitted), *rev'd on other grounds*, 481 N.W.2d 547 (Minn. 1992). As described above, a private actor's mere receipt of public funds does not transform her actions into those of the state. *See Nichols*, 50 F.3d at 517–18 (citing *Rendell-Baker*, 457 U.S. at 840–43). Charnesky has not plausibly alleged that the conduct she attributes to Teed was in some way directed by state officials or flowed from some agreement between Teed and state officials to violate Charnesky's rights. Because Charnesky has not plausibly alleged that Teed undertook any actions under color of state law, Teed is entitled to dismissal of Charnesky's § 1983 claims against her.

b

Suhler, Jenkins, and Teed also each move to dismiss the ADA-retaliation claim against them under *Twombly*. *See* Suhler's Mem. in Supp. at 17–19; Teed's Mem. in Supp. at 2; Jenkins's Mem. in Supp. at 2. The ADA provides that it is "unlawful to coerce, intimidate, threaten, or interfere with any individual . . . on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b). To establish a prima facie case of retaliation under the ADA, Charnesky must prove: "(1) that [s]he engaged in a statutorily protected activity, (2) that an adverse action was taken against h[er], and (3) a causal

connection between the adverse action and the protected activity." *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1074 (8th Cir. 2006) (quoting *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999)).

As an initial matter, Charnesky has not explained the legal theory under which reporting B.C.'s assault to the Olmstead County District Court constituted a statutorily protected activity, and it seems doubtful that it was. But assuming that the ADA protected her report, and assuming that the conduct she alleges that Suhler, Jenkins, and Teed undertook constitutes adverse action (again, on the facts alleged here, that seems doubtful), she does not plausibly plead a causal connection between those Defendants' conduct and Charnesky's report of B.C.'s assault to the Olmstead County Court. *See Rickmyer v. Browne*, 995 F. Supp. 2d 989, 1015–16 (D. Minn. 2014) (finding that plaintiff's failure to allege "specific facts to show that any action taken by Defendant . . . was either an adverse action against Plaintiff or was connected to Plaintiff's ADA advocacy" warranted dismissal of his claim).

Much of the allegedly wrongful conduct by Suhler began when he was appointed as Charnesky's attorney in June 2017, four months before B.C.'s assault. *Compare* Compl. ¶ 100 *with* ¶ 103. To the extent that Suhler's allegedly wrongful conduct simply continued, unchanged, after B.C.'s assault (and presumably after Charnesky's report to the Court), it *by definition* did not occur *because of* Charnesky's report. As to Jenkins, Charnesky does not allege that she even knew about B.C.'s assault, much less Charnesky's report to the Olmstead County court, or that there was any connection at all between that report and Jenkins's conduct. Finally, Charnesky does not allege that Teed monitors B.C.'s phone

calls with Charnesky or prevented B.C. from calling Charnesky on Christmas in 2017 *because* Charnesky reported B.C.'s assault, nor does a liberal construction of the Complaint reveal any basis from which such a causal connection reasonably might be inferred. Because Charnesky has not plausibly alleged a causal connection between her report to the Olmstead County court and the allegedly wrongful conduct by either Suhler, Jenkins, or Teed, Charnesky's ADA-retaliation claim must be dismissed as to those three Defendants.

III

The pending motion by the Olmstead County Defendants seeks dismissal only as to claims brought on behalf of B.C. *See* Olmstead Cty. Defs.' Mem. in Supp. at 2–3 (seeking dismissal of "all claims brought on behalf of B.C." and of Counts III and IV, which were brought solely on behalf of B.C.) [ECF No. 69]. At this time, they have not moved to dismiss any of the claims brought by Charnesky on her own behalf; rather, they seek "[a]n Order . . . requiring Charnesky to reply to Paragraphs 39 and 40 of the Olmstead County Defendants' Answer, including all subparts," pursuant to Rule 7(a)(7). *Id.* at 3. Those paragraphs assert as affirmative defenses a number of immunities under federal and state law, respectively. Olmstead Cty. Defs.' Answer ¶¶ 39–40 [ECF No. 10].

Rule 7(a)(7) permits, "if the court orders one, a reply to an answer." Where, as here, the claim implicates potential immunities, it is appropriately used in the early, pre-discovery stages of litigation to assist a defendant to assess and present to a court details that might be relevant in determining whether government-official defendants enjoy immunity from suit. *See Crawford-El v. Britton*, 523 U.S. 574, 597–98 (1998). District courts possesses discretion whether to permit a reply. *See generally* 5 Charles Alan Wright

& Arthur R. Miller et al., *Federal Practice & Procedure: Civil* § 1185 (3d ed. Nov. 2018 Update).  But at least one court of appeals has held that a district court may abuse its discretion by not ordering a reply to an answer when doing so might assist in resolving immunity defenses early in the litigation.  *See Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).  The United States Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  In *Crawford-El v. Britton*, the Supreme Court identified an order under Rule 7(a)(7) for a reply to an answer, along with a motion for a more definite statement pursuant to Rule 12(e), as the "two primary options [for attempting to resolve immunity-related issues] prior to permitting any discovery at all."  523 U.S. at 598.

Here, the Olmstead County Defendants request a reply to two paragraphs of their answer that specifically identify two or more theories of immunity for each individual Defendant.  Olmstead Cty. Defs.' Mem. in Supp. at 3; *see* Olmstead Cty. Defs.' Answer ¶¶ 39–40.  Under their proposal, Charnesky would be required to set forth specific, non-conclusory factual allegations responsive to each subpart of those paragraphs.  That method of attempting to resolve immunity-related issues prior to discovery seems to have a particular advantage in this case because the subparts of paragraphs 39 and 40 may assist Charnesky, a pro se plaintiff, in focusing her pleading on the relevant legal and factual issues in a way that a more open-ended motion for a more definite statement might not. For all these reasons, the Olmstead County Defendants' request will be granted, and Charnesky will be ordered to file a reply setting forth specific, non-conclusory factual

allegations responsive to each subpart of paragraphs 39 and 40 of the Olmstead County Defendants' Answer.

Magistrate Judge Menendez previously ordered that all discovery in this case would remain stayed until resolution of the motions to dismiss. Jan. 7, 2019 Order at 2 [ECF No. 39]. The Court is mindful of the Supreme Court's admonition that immunity-related issues should be resolved as early as possible in the litigation, *Pearson*, 555 U.S. at 232, and, where appropriate, prior to any discovery at all, *Crawford-El*, 523 U.S. at 598. Accordingly, the stay of discovery imposed by Magistrate Judge Menendez will remain in place until further notice. At the same time, discovery must not linger unnecessarily. Therefore within fourteen days of the date on which the Olmstead County Defendants are served with Charnesky's Reply to their Answer, they must file and serve a notice informing the Court whether they intend to file a second early dispositive motion asserting any immunity, and what, if any, claims they do not intend to make the subject of an immediate immunity-related dispositive motion.

IV

At the hearing on the motions to dismiss, Charnesky made an oral motion to amend her Complaint—not to add claims or defendants, but to better address some of the issues raised in Defendants' briefs. The motion to amend will be denied without prejudice. To the extent that she intends her amendment to better anticipate Defendants' immunity-related defenses, the reply she files to paragraphs 39 and 40 of the Olmstead

County Defendants' Answer will provide an effective mechanism for her to do so, and to do so efficiently.

V

Charnesky's motion to unseal the Complaint will also be denied. To be sure, a common-law right of access exists with respect to judicial records. *Webster Groves Sch. Dist. v. Pulitzer Publ'g Co.*, 898 F.2d 1371, 1376 (8th Cir. 1990) (quoting *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978)). But "[t]his right of access is not absolute, [and it] requires a weighing of competing interests." *Webster Groves Sch. Dist.*, 898 F.2d at 1376. The Complaint in this case identifies B.C. by name and contains a great deal of personal and medical information about him. The same is true of many of Charnesky's other filings in this case.[8] Personal medical information is "typically . . . subject to an order to seal."

---

[8] Charnesky's Motion to Unseal contains B.C.'s name and birth date. ECF No. 6. Letters submitted by B.C.'s aunt in support of Charnesky also contain B.C.'s name. ECF Nos. 32, 37, 38, 76. Letters from Charnesky to the Court contain B.C.'s name or Social Security Number and variously describe or attach documents relating to ongoing therapy B.C. is receiving and describe aspects of his medical history and his experiences in foster care. ECF Nos. 40, 40-1, 41, 41-1, 42, 42-1, 42-2, 42-3. Her briefs and many of the exhibits she has filed in opposition to Defendants' motions to dismiss likewise contain B.C.'s name and most contain his personal and medical information. *See* ECF Nos. 77, 77-1, 77-2, 77-3, 77-4, 77-6, 77-7, 77-11, 77-15, 77-16, 77-17, 77-19, 77-21, 79, 80, 81, 82, 84, 84-2. Unless any Party files an objection to the Court's assessment in that regard, those documents will be maintained under seal. Other filings by B.C.'s aunt or by Charnesky herself do not appear to implicate B.C.'s privacy interests. *See* ECF Nos. 37-1, 38-1, 40-2, 42-4, 44, 44-1, 76-1, 77-5, 77-8, 77-9, 77-10, 77-12, 77-13, 77-14, 77-18, 77-20, 77-22, 79-1, 84-1, 84-3. Unless any Party files an objection to the Court's assessment in that regard, they will be unsealed.

The Parties should carefully review each of the above-referenced filings and, if they disagree with the foregoing determinations, should file an objection within fourteen days of the date of this Order identifying each docket number which they believe should be handled in a different way than described above, and any supporting factual and legal basis for that position.

*Skky, LLC v. Facebook, Inc.*, 191 F. Supp. 3d 977, 981 (D. Minn. 2016).  The concerns about B.C.'s privacy are particularly heightened here because he was a minor when the case was filed, he remains under a limited guardianship, and no Party has provided the Court any reason to believe he has been fully apprised of the existence, scope, and nature of this litigation or otherwise consented to having his personal and medical information published on the Court's docket.  After all, this case was commenced by a non-custodial parent with whom he apparently has had extremely limited communication while in foster care.  The Court has reviewed Charnesky's filings with an eye toward B.C.'s potential privacy concerns and has determined that it is not practicable to accommodate those concerns through the Court's own redaction of the documents, which are voluminous. Therefore, to the extent that the Complaint and other filings in this case implicate B.C.'s privacy interests, the Court will order them to be maintained under seal.  The Parties are advised that, in future filings, B.C. should be identified only by his initials in publicly available filings, and that, as appropriate, documents implicating his privacy concerns or which might for other reasons be appropriately sealed should be filed under temporary seal in accordance with Local Rule 5.6.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    All claims against the DHS Defendants—specifically, Tony Lourey, Nikki Farago, Jamie Sorenson, and Karen Haugerud—are **DISMISSED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 41(a).

2.      The Motion To Dismiss filed by the DHS Defendants [ECF No. 15] is **DENIED AS MOOT**.

3.      The Motion To Dismiss filed by the Olmstead County Defendants [ECF No. 67]—specifically, Heidi Welsh, Paul Fleissner, Sarah Oakes, Emily Colbenson, Amy Shilliabeer, Jesse Stratton, Chad Kirschbaum, Kim Pease, Marissa Gagnon, Jennifer Still, Mark Ostrem, and Michelle Barnes—is **GRANTED** as follows:

   a. Insofar as the Complaint purports to bring claims against the Olmstead County Defendants on behalf of B.C., those claims are **DISMISSED WITHOUT PREJUDICE**.

   b. The Olmstead County Defendants' motion for an Order requiring Plaintiff Jill Charnesky to reply to certain paragraphs of their Answer is **GRANTED**.

   c. Pursuant to Fed. R. Civ. P. 7(a)(7), Charnesky is hereby **ORDERED** to file a Reply to paragraphs 39 and 40 of the Olmstead County Defendants' Answer, setting forth specific, non-conclusory factual allegations responsive to each subpart of those paragraphs. Charnesky's reply must be filed on or before May 3, 2019.

   d. Within fourteen days of the date on which Charnesky's Reply is docketed, the Olmstead County Defendants must file and serve a notice informing the Court whether they intend to immediately file a dispositive

motion on the subject of any immunity, and what, if any claims they do not intend to make the subject of an immediate dispositive motion.

e. All discovery in this action remains **STAYED** until further notice.

4. The Motion To Dismiss filed by Defendant Frederick Suhler [ECF No. 45] is **GRANTED** as follows:

a. Insofar as the Complaint purports to bring claims against Suhler on behalf of B.C., those claims are **DISMISSED WITHOUT PREJUDICE**.

b. Insofar as the Complaint purports to bring claims against Suhler on behalf of Plaintiff Jill Charnesky, those claims are **DISMISSED WITH PREJUDICE**.

5. The Motion To Dismiss filed by Defendant Susan Jenkins, M.D. [ECF No. 54] is **GRANTED** as follows:

a. Insofar as the Complaint purports to bring claims against Jenkins on behalf of B.C., those claims are **DISMISSED WITHOUT PREJUDICE**.

b. Insofar as the Complaint purports to bring claims against Jenkins on behalf of Plaintiff Jill Charnesky, those claims are **DISMISSED WITH PREJUDICE**.

6. The Motion To Dismiss filed by Defendant Judith Teed [ECF No. 52] is **GRANTED** as follows:

a. Insofar as the Complaint purports to bring claims against Teed on behalf of B.C., those claims are **DISMISSED WITHOUT PREJUDICE**.

b. Insofar as the Complaint purports to bring claims against Teed on behalf of Plaintiff Jill Charnesky, those claims are **DISMISSED WITH PREJUDICE**.

7. Charnesky's Motion To Unseal The Complaint [ECF No. 6] is **DENIED**.

8. Unless a Party files an objection to the Court's sealing determinations on or before April 19, 2019:

a. the following documents shall remain under seal indefinitely: ECF Nos. 1, 6, 32, 37, 38, 40, 40-1, 41, 41-1, 42, 42-1, 42-2, 42-3, 76, 77, 77-1, 77-2, 77-3, 77-4, 77-6, 77-7, 77-11, 77-15, 77-16, 77-17, 77-19, 77-21, 79, 80, 81, 82, 84, and 84-2; and

b. the following documents shall be unsealed: ECF Nos. 37-1, 38-1, 40-2, 42-4, 44, 44-1, 76-1, 77-5, 77-8, 77-9, 77-10, 77-12, 77-13, 77-14, 77-18, 77-20, 77-22, 79-1, 84-1, and 84-3.

9. Charnesky's oral motion to amend her Complaint is **DENIED WITHOUT PREJUDICE**.

Dated: April 5, 2019                                    s/ Eric C. Tostrud
                                                        Eric C. Tostrud
                                                        United States District Court