UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| JILL CHARNESKY, Individually and as Mother and Next Friend of B.C., a Minor and Disabled Individual, | File No. 18-cv-2748 (ECT/KMM) |
| Plaintiff, | |
| v. | |
| HEIDI WELSH, Individually and in her Official Capacity as Olmsted County Administrator;<br>PAUL FLEISSNER, Individually and in his Official Capacity as Deputy County Administrator of Olmsted County Health, Housing and Human Services;<br>SARAH OAKES, Individually and in her Official Capacity as Director of Health, Housing and Human Services for Olmsted County;<br>EMILY COLBENSON, in her Official Capacity as Director of Adult and Family Services in Olmsted County;<br>AMY SHILLIABEER, Individually and in her Official Capacity as Director of Child and Family Services;<br>JESSE STRATTON, Individually and in his Official Capacity as Supervisor of Child Protection Services;<br>CHAD KIRSCHBAUM, Individually and in his Official Capacity as Supervisor of Child Protection Services;<br>KIM PEASE, Individually and in her Official Capacity of Social Worker;<br>MARISSA GAGNON, Individually and in her Official Capacity of Social Worker; | **OPINION AND ORDER** |

JENNIFER STILL, Individually and in her
Official Capacity of Social Worker;
MARK OSTREM, Individually and in his
Official Capacity as Olmsted County
Attorney;
MICHELLE BARNES, Individually and in
her Official Capacity as Assistant Olmsted
County Attorney; and
Unknown DOE defendants,

          Defendants.
_____

Jill Charnesky, pro se.

Gregory J. Griffiths, Dunlap & Seeger, Rochester, MN, for Defendants Heidi Welsh, Paul Fleissner, Sarah Oakes, Emily Colbenson, Amy Shilliabeer, Jesse Stratton, Chad Kirschbaum, Kim Pease, Marissa Gagnon, Jennifer Still, Mark Ostrem, and Michelle Barnes.

_____

      This is the second round of Rule 12 motions in this case, in which pro se Plaintiff Jill Charnesky challenges a series of actions relating to her and her son B.C.'s relationship with child protective services in Olmsted County, Minnesota. Many of Charnesky's claims were dismissed following the first round of Rule 12 motions. The dismissed claims include all claims against four Defendants associated with the Minnesota Department of Human Services, all claims against three private-individual Defendants, and claims against the other twelve Defendants, each associated with Olmsted County, Minnesota (collectively, the "Olmsted County Defendants"), insofar as the claims were brought on behalf of B.C. *See generally Charnesky v. Lourey*, No. 18-cv-2748 (ECT/KMM), 2019 WL 1505995 (D. Minn. Apr. 5, 2019) [ECF No. 85]. Only the claims Charnesky brought on her own behalf against the Olmsted County Defendants remained following the April 2019 order. With

respect to those claims, Charnesky was ordered to reply to certain paragraphs of the Olmsted County Defendants' answer to better enable the Parties and the Court to resolve whether various immunity-related defenses might apply here. *Id.* at *9. Charnesky did so,[1] and the Olmsted County Defendants now move for judgment on the pleadings as to all remaining claims against them. ECF No. 93. For the reasons described below, that motion will be granted.

I[2]

The April 2019 order describes the facts alleged in the complaint in detail, *see generally* Charnesky, 2019 WL 1505995, and they will be summarized only briefly here. Charnesky alleges that while B.C., who is disabled, was receiving medical care at the Mayo Clinic in Rochester, Minnesota, a Mayo resident made a serious medication error that sent B.C. to the emergency room. To preemptively discredit Charnesky in the event she pursued a malpractice claim based on the medication error, the resident at fault initiated a false CHIPS petition with Olmsted County Child Protection indicating that B.C. was the victim of child abuse. ("CHIPS" stands for "child in need of protection or services," *see generally*

---

[1] Charnesky was ordered to file her reply by May 3, 2019, but she did not do so until May 10, 2019. ECF Nos. 85 at 25 (setting filing deadline); 87–88 (filings). The Olmsted County Defendants ask that Charnesky's remaining claims be dismissed because her reply was filed seven days late and was substantively inadequate. *See* Olmsted Br. at 4–6 [ECF No. 95]. Under the circumstances, dismissal for overshooting the deadline by a week would be a disproportionately harsh sanction.

[2] In describing the relevant facts and resolving the Olmsted County Defendants' motion for judgment on the pleadings, all factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in Charnesky's favor. *See Lane v. Nading*, 927 F.3d 1018, 1021 (8th Cir. 2019).

3

Minn. Stat. § 260C.141.)  Olmsted County social worker and Defendant Jennifer Still authored the petition, which alleged that Charnesky suffered from factitious disorder by proxy (previously called Munchausen syndrome by proxy), a condition in which the subject falsely claims that another person has physical or psychological signs or symptoms of illness, or causes injury or disease in another person—here, according to the CHIPS petition, B.C.—with the intention of deceiving others.  Charnesky had no such condition, but B.C. was taken into custody by Olmsted County anyway.  After a stay in a foster home where he was emotionally and verbally abused and driven to harm himself, B.C. was sent to a juvenile correctional facility.  There, he was assaulted.  Olmsted County authorities did not tell anyone about the assault; Charnesky only learned about it by happenstance, and an Olmsted County judge did not know about the assault until Charnesky informed him. CPS then began retaliating against Charnesky by further limiting her already limited contact with B.C.  When these events began, B.C. was 16 years old, and he turned 18 shortly after Charnesky commenced this action in September 2018.  He apparently remains in long-term foster care, and his case is expected to be next reviewed by an Olmsted County judge in late March or early April 2020.  *See* ECF No. 110-1 at 1.

As mentioned earlier, the Olmsted County Defendants' answer asserted some combination of immunities under state and federal law as to each of the Olmsted County Defendants. ECF No. 10 ¶¶ 39–40.  The Court ordered Charnesky to file a reply to those portions of the Olmsted County Defendants' answer, in which she was to "set[ ] forth specific, non-conclusory factual allegations responsive to each subpart of those paragraphs." *Charnesky*, 2019 WL 1505995, at *9.  Most pertinent to this motion are the

following allegations in Charnesky's complaint and reply that pertain to the Olmsted County Defendants:

- Defendant Mark Ostrem, the Olmsted County Attorney, "participated in the prosecution and factual investigation of the allegations against Charnesky." Compl. ¶ 18. He presented false evidence at B.C.'s guardianship hearing that Charnesky "did not want to challenge the guardianship matter." Reply at 6, 20. Although such hearings would usually have been handled by "low level associate attorneys," Ostrem personally appeared for the purpose of preventing Charnesky from objecting to the guardianship proceeding. *Id.* at 6, 20. B.C. was not present at the hearing, and Charnesky, though present, was not permitted to speak. *Id.* at 6, 20. Charnesky alleges that this conduct by Ostrem deprived her of her right, as B.C.'s mother, to object to B.C.'s guardianship. *Id.* at 6–7.

- Defendant Michelle Barnes, an Assistant Olmsted County Attorney, "led and directed" the investigation of the state-court allegations against Charnesky. Compl. ¶ 17. She failed to produce B.C.'s medical records in response to a request by Charnesky's counsel, records that were highly relevant to the question of whether Charnesky had factitious disorder by proxy or whether B.C. indeed did have certain medical conditions. Reply at 7, 21; *see also* Compl. ¶¶ 88–90, 93. Charnesky characterizes this as an "administrative function" that "had nothing to do with the judicial process." Reply at 7, 21. Charnesky contends that Barnes's failure to produce the records violated her due process rights. *Id.* at 8, 21.

- Defendants Heidi Welsh, the Olmsted County Administrator; Paul Fleissner, the Deputy County Administrator of Olmsted County; Sarah Oakes, the Director of Health, Housing and Human Services for Olmsted County; Emily Colbenson, the Director of Adult and Family Services for Olmsted County; and Amy Shilliabeer, the Director of Child and Family Services for Olmsted County "would have access to financial data and would have supervised the allocation of funds," "would have known that CPS was placing foster children in an illegal placement, a juvenile CORRECTIONAL facility," and "would have known and authorized the entrapment of children in foster care for excessive amounts of time" for the purpose of

5

maximizing the "profitability" to Olmsted County of such placements rather than prioritizing the reunification of families. Reply at 9 (Welsh), 10 (Fleissner), 11 (Oakes), 12 (Colbenson), and 13 (Shilliabeer).

- Defendant Jesse Stratton, a Supervisor in Child Protective Services for Olmsted County, threatened Charnesky after Charnesky told one of B.C.'s high-school teachers following B.C.'s hospitalization for self-harm that B.C. had been abused in his first foster placement. Reply at 15. Specifically, Stratton told Charnesky that that he would ensure that B.C "would be put in a locked residential facility for the rest of his life if [Charnesky] ever told anyone about the abuse." *Id.*; *see also* Compl. ¶ 98 (attributing this threat to an unidentified CPS supervisor).

- Defendant Chad Kirschbaum, a Supervisor in Child Protective Services for Olmsted County, personally authorized B.C.'s placement in the juvenile correctional facility. Reply at 16.

- Defendants Shilliabeer, Stratton, Kirschbaum, and Olmsted County social workers Kim Pease, Marissa Gagnon, and Jennifer Still failed to advise Olmsted County district court judge Kevin Lund that B.C. had been assaulted in the juvenile correctional facility, and Charnesky characterizes the failure to inform the court as a criminal act. Reply at 13 (Shilliabeer), 14 (Stratton), 16 (Kirschbaum), 17 (Pease), 18 (Gagnon), 19 (Still). Charnesky notes that Still is not licensed as a social worker. *Id.* at 19. Pease and Gagnon had actual notice of the assault. Compl. ¶ 100.

- Defendants Shilliabeer and Stratton are "responsible for the training, direction, supervision and development of policies that led to the unconstitutional actions of" the defendants who are social workers—Kirschbaum, Stratton, Still, Pease, and Gagnon. Reply at 13 (Shilliabeer), 14 (Stratton).

- Finally, Defendants Pease and Gagnon "perpetuated an illegal CHIPS petition in order to make money for CPS," and repeatedly lied to Judge Lund about unidentified things Charnesky said and did. Reply at 17 (Pease), 18 (Gagnon).

6

II

Four claims remain in this case: Count I, a § 1983 substantive due process claim against all Olmsted County Defendants based on the removal of B.C. from Charnesky's home;[3] Count VI, a civil-rights-conspiracy claim[4] against all Olmsted County Defendants; Count VII, an ADA-retaliation claim against all Olmsted County Defendants; and Count VIII,[5] a § 1983 claim alleging prosecutorial misconduct against two of the Olmsted County Defendants, Mark Ostrem and Michelle Barnes. The Olmsted County Defendants move for judgment on the pleadings as to all of these claims. *See* Mot. [ECF No. 93]; Fed. R. Civ. P. 12(c).

A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standard as a motion to dismiss under Rule 12(b)(6). *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d

---

[3] As noted in the April 2019 order, Charnesky nominally brings Count I pursuant to 42 U.S.C. § 1982, but that appears to be a typographical error. *See* Order at 11 [ECF No. 85]. Section 1982 pertains to racial discrimination in the context of property rights. Count I alleges that Charnesky's substantive due process rights were violated in B.C.'s removal from her home; that claim therefore will be construed as arising under § 1983. *See Erickson v. Pardus*, 551 U.S 89, 94 (2007) (per curiam) (applying liberal pleading construction to pro se filings).

[4] Charnesky pleads this claim as arising under 42 U.SC. § 1983, but it seems more readily understood as a claim under § 1985, which addresses civil-rights conspiracies. *See Erickson*, 551 U.S. at 94 (applying liberal pleading standard to pro se filings).

[5] The complaint lists this as Count "XIII," apparently in error. *See* Compl. at 49.

787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

A

Count VIII alleges that Ostrem and Barnes are liable under § 1983 for prosecutorial misconduct in the state-court proceedings. Similarly, Counts I and VI arise, at least in part, from allegedly wrongful acts various Defendants committed in connection with the initiation of and their participation in those state-court proceedings. Insofar as Charnesky's claims relate to the initiation or litigation of the state-court child-protection case, those claims are barred by one or another form of absolute immunity.

Ostrem and Barnes present the quintessential example of absolute prosecutorial immunity, which protects county attorneys and their assistants when they are acting within the scope of their prosecutorial authority in child-protection cases. *McCuen v. Polk County*, 893 F.2d 172, 174 (8th Cir. 1990). As the Eighth Circuit explained in *Williams v. Hartje*:

> The doctrine involves a choice between protecting all prosecutors from harassing lawsuits over their official acts and providing redress for all injuries occasioned by those acts. When such a choice is made in the law, it is inevitable that someone will be hurt. But the choice must be made, and it has been long decided that it is better to allow a few wrongs to go unredressed than to expose all prosecutors to the risk of retaliation for their occasional honest mistakes.

8

827 F.2d 1203, 1208 (8th Cir. 1987). "Not all acts of a prosecutor are immunized, but the immunity does extend to cover all acts undertaken in the role of advocate in the judicial phase of criminal proceedings." *Id.* To determine whether an official's actions fall within the scope of the immunity, courts use "a functional approach that looks to 'the nature of the function performed, not the identity of the actor who performed it.'" *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1987)). Conduct protected by the immunity includes "the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process," *id.*, even if the actions are "patently improper" or made "in a consciously malicious manner, or vindictively, or without adequate investigation, or in excess of [the prosecutor's] jurisdiction," *Williams*, 827 F.2d at 1208–09.

The conduct by Ostrem and Barnes which Charnesky contends violated her rights falls within the scope of the conduct protected by the immunity. The violations she alleges against Ostrem involve his conduct in the courtroom at the guardianship proceeding—in other words, "the presentation of the state's case at trial." *See Brodnicki*, 75 F.3d at 1266. The violations she alleges against Barnes relate to Barnes's failure to produce certain medical evidence that would have been significant and beneficial to Charnesky's interests in the guardianship matter. But prosecutors have immunity from suits based on their failure to produce exculpatory evidence. *Woodworth v. Hulshof*, 891 F.3d 1083, 1089 (8th Cir. 2018) (noting that "*Brady* violations fall within the scope of prosecutorial immunity" and that "[t]o the extent Woodworth claims any improprieties unrelated to *Brady*, we have

9

instructed that a prosecutor is immune from suit even if he 'knowingly presented false, misleading, or perjured testimony . . . or withheld or suppressed exculpatory evidence.'" (quoting *Reasonover v. St. Louis Cty.*, 447 F.3d 569, 580 (8th Cir. 2006)). Because the facts Charnesky alleges against Ostrem and Barnes are wholly prosecutorial in nature, her claims against them are barred by the doctrine of absolute prosecutorial immunity.

Insofar as any of Charnesky's remaining claims could be understood to be based on Still, Pease, or Gagnon instituting or maintaining the CHIPS petition under false pretenses and for the purposes of making money for CPS, *see* Compl. ¶ 22, 47–49; Reply at 17–18, those actions also are protected by absolute immunity under longstanding Eighth Circuit precedent. To the extent Charnesky alleges that any of them violated her rights by initiating the CHIPS petition based on deliberately falsified information, those Defendants enjoy absolute prosecutorial immunity because that role is "functionally comparable to that of a prosecutor." *Thomason v. SCAN Volunteer Servs., Inc.*, 85 F.3d 1365, 1373 (8th Cir. 1996) (citing *Myers v. Morris*, 810 F.2d 1437, 1452 (8th Cir. 1987), *cert. denied*, 484 U.S. 828 (1987), *abrogated on other grounds by Burns v. Reed*, 500 U.S. 478 (1991)). And to the extent that Charnesky alleges they violated her rights by giving false testimony in those proceedings as a state-court witness, they are protected by absolute witness immunity. *Id.* at 1373 (citing *Manzano v. S.D. Dep't of Soc. Servs.*, 60 F.3d 505, 512 (8th Cir. 1995)).

B

The Olmsted County Defendants argue that the other remaining claims—under § 1983 for the removal of B.C. from Charnesky's home, a civil-rights conspiracy, and for

ADA retaliation, all brought against every remaining Olmsted County Defendant—are not plausibly pleaded under *Twombly* and *Iqbal*. Olmsted Br. at 6–7.

It is fairly straightforward to conclude that Count VI, the civil-rights-conspiracy claim, has not been plausibly pleaded. To plausibly plead a conspiracy claim requires a plaintiff to allege "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Nothing in Charnesky's complaint or reply suggests (or at least suggests in anything more than conclusory terms) that any of the Olmsted County Defendants reached any agreement with one another to deprive her of any right. For that reason, Count VI will be dismissed in its entirety.

As for the other claims, the Olmsted County Defendants argue quite broadly that "Charnesky collectively makes reference to the actions and inactions of 'defendants'" and "pled no facts as to what any of the specific Olmsted County Defendants did or did not do." Olmsted Br. at 6–7. That is not entirely correct. In her reply, Charnesky alleges actions or inactions by specific Olmsted County Defendants: as detailed above, certain of them supervised the allocation of funds and sought to maximize the "profitability" to the County of foster placements at the expense of pursuing family reunification; certain of them failed to notify the Olmsted County district court judge that B.C. had been assaulted in the juvenile correctional facility; two of them trained and supervised the county social workers; one authorized B.C.'s placement in the juvenile correctional facility; another threatened Charnesky that her son would be placed in a residential facility for the rest of his life if she told anyone B.C. had been abused in his foster placement.

Most of these allegations do not "raise a right to relief [on her remaining § 1983 claims] above the speculative level." *Twombly*, 550 U.S. at 555. In particular, Charnesky has not plausibly alleged that any Defendant violated her rights by their: (1) role with respect to the allocation of funds and maximization of the "profitability" of foster placements generally; (2) authorization of B.C.'s placement in the juvenile correctional facility after his first foster placement deteriorated; (3) failure to advise the Olmsted County district court judge that B.C. had been assaulted in the juvenile correctional facility; or (4) training or supervision of the social worker defendants. These allegations do not relate to actions undertaken with respect to Charnesky (as opposed to B.C., whose claims were previously dismissed without prejudice), and Charnesky has not plausibly alleged how any of these alleged actions affected her rights.

Charnesky's ADA retaliation claim is not plausibly pleaded, either, but why this is so deserves somewhat greater explanation. The ADA provides that it is "unlawful to coerce, intimidate, threaten, or interfere with any individual . . . on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b). To establish a prima facie case of retaliation under the ADA, Charnesky must prove: "(1) that [s]he engaged in a statutorily protected activity, (2) that an adverse action was taken against h[er], and (3) a causal connection between the adverse action and the protected activity." *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1074 (8th Cir. 2006) (quoting *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999)). To be engaged in protected activity, an individual must object to an action prohibited by the ADA or charge, testify about, or assist or participate in an

investigation regarding an action prohibited by the ADA. *Lindgren v. Camphill Village Minn., Inc.*, No. Civ.00 -2771 RHK/RLE, 2002 WL 1332796, at *7 (D. Minn. June 13, 2002). An objection may be formal or informal, and it is enough if the plaintiff reasonably believes the activity in question to be a violation of the ADA. *See Sherman v. Runyon*, 235 F.3d 406, 409–10 (8th Cir. 2000). Complaints about "unsavory" or other bad acts are not protected activity unless the acts are prohibited by the ADA. *See Bakhtiari v. Lutz*, 507 F.3d 1132, 1137–38 (8th Cir. 2007). Complaints are not protected activity when they are vague or speculative, *Equal Emp't Opportunity Comm'n v. Prod. Fabricators, Inc.*, Civ. No. 11 -2071 (MJD/LIB), 2013 WL 1104731, at *12 (D. Minn. Mar. 18, 2013), or when they are only marginally related to the ADA, *Riggs v. Bennett County Hosp. & Nursing Home*, No. CIV. 16 -5077-JLV, 2019 WL 1441205, at *21 (D.S.D. Mar. 31, 2019).

Charnesky may reasonably be understood to identify two reports that she would say are protected activity. *See Erickson*, 551 U.S at 94 (applying liberal pleading construction to pro se filings). First, during a meeting at B.C.'s school to discuss his individualized education program, *see* 34 C.F.R. § 300.320, Charnesky told one of B.C.'s teachers that B.C. had been assaulted in his foster placement. Compl. ¶ 98. Second, Charnesky alleges that she reported to the state-court judge that B.C. had been assaulted in the juvenile correctional facility where he was sent after his hospitalization. *Id.* ¶ 107. But these reports are not protected activity. Charnesky does not say how her reports of the assaults B.C. suffered in foster placement and in the juvenile correctional facility related in any way to a violation of the ADA. Charnesky does not allege that her reports referenced the ADA contemporaneously. The allegations in Charnesky's complaint provide no basis to infer an

13

implicit connection between her reports and the ADA. She does not identify now an ADA provision to which her reports might have been related then. It is not feasible—and perhaps not possible—to afford Charnesky the benefit of the doubt and identify either a subsection of the ADA or a regulation promulgated under the ADA implicated by Charnesky's reports to B.C.'s teacher or the state-court judge. One court in this District has determined definitively that a report of an "assault" was not protected activity because the assault was not prohibited by the ADA. *Lindgren*, 2002 WL 1332796, at *8. The absence of any tether between the two reports Charnesky identifies and the ADA means her ADA retaliation claim is implausible and must be dismissed.

Though Charnesky did not request it, she will be given the opportunity to file and serve an amended complaint addressing her ADA retaliation claim's deficiencies. As a practical matter, Defendants did not argue specifically that Charnesky had failed to plead protected activity, and Charnesky should have the chance to replead and reframe her allegations in view of the guidance provided for the first time here. As a legal matter, Charnesky's complaint includes enough to think she deserves a second chance with respect to her ADA retaliation claim. Charnesky alleges many facts suggesting that she advocated for B.C. and that B.C.'s foster-care placement was not suitable. *See*, *e.g.*, Compl. ¶¶ 94 – 96. It does not require imagining the impossible to think that Charnesky's advocacy in some legally relevant way might have concerned the ADA. And she alleges that Stratton, a CPS Supervisor, told Charnesky that if she told anyone else about B.C.'s abuse, Stratton would put B.C. in a locked residential psychiatric ward for the rest of his life. Compl. ¶¶ 16, 98; Reply at 15. Under the circumstances, that represented a threat not only about

14

B.C.'s own continued confinement, but also about Charnesky's ability to interact or potentially reunite with her son.[6]

III

Charnesky previously moved for recusal pursuant to 28 U.S.C. § 455 [ECF No. 101], and the motion was denied on September 5, 2019 [ECF No. 105]. The next day, she filed a motion to appeal or for reconsideration. ECF No. 106. Aside from three-and-a-half sentences that were added on the fourth page, the body of the new motion appears to be identical to the previously denied recusal motion. *See id.* at 4. It presented no new evidence or argument. Local Rule 7.1(j) provides that a party must not file a motion to reconsider unless she has received prior permission from the Court to do so. LR 7.1(j). "A party who seeks permission to file a motion to reconsider must first file and serve a letter of no more than two pages requesting such permission" and "must show compelling circumstances" to justify the reconsideration it seeks. *Id.* Charnesky has not complied with any of those requirements, and her motion for reconsideration will be denied for that procedural reason and also because the same arguments already were considered and rejected when they were captioned as a motion to recuse.

---

[6] The April 2019 Order stayed discovery pending resolution of any immunity issues that might be resolved in an early dispositive motion. *Charnesky*, 2019 WL 1505995, at *8. Given the disposition of this motion, that stay will remain in effect.

15

**ORDER**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Defendants' Motion for Judgment on the Pleadings [ECF No. 93] is **GRANTED**;

2. The stay of discovery [ECF No. 85 at 26] remains in effect;

3. Plaintiff's motion [ECF No. 106] to appeal or for reconsideration of the September 6, 2019 order denying her earlier motion to recuse is **DENIED**; and

4. Within 30 days of the date of this Order, Plaintiff may file an amended complaint to cure the deficiencies identified in this opinion with respect to her ADA retaliation claim.


Dated: December 2, 2019                s/ Eric C. Tostrud
                                        Eric C. Tostrud
                                        United States District Court